**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| TOORA BROTHERS, INC., a Montana corporation, and PARADEEP KUMAR, an individual,<br><br>                     Plaintiffs,<br><br>   v.<br><br>AMTRUST NORTH AMERICA, INC., a Foreign Corporation, and JOHN DOES 1-15,<br><br>                     Defendants. | **CV-24-37-GF-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Defendant Am Trust North America, Inc. ("Am Trust") filed a motion to dismiss for failure to state a claim on June 10, 2024. (Doc. 5.) Plaintiffs Toora Brothers, Inc. ("Toora Brothers") and Pardeep Kumar ("Kumar") (collectively "Plaintiffs") oppose Am Trust's motion. (Doc. 9.) The Court conducted a motion hearing on July 10, 2024. (Doc. 15.)

## FACTUAL BACKGROUND

This action concerns a Commercial Lines insurance policy ("the Policy") purchased from Am Trust covering the Glacier Way C-Store in Browning, Montana.

Plaintiffs assert that Toora Brothers entered a Contract for Deed with Patrick and Violet Schildt ("the Schildts") for the purchase of the Glacier Way C-Store, located at 99 Highway 464, Browning, MT. (Doc. 1 at 4-5.) Kumar, who wholly owns and operates Toora Brothers, alleged that the Schildts attempted to sell the Glacier Way C-Store in violation of the Contract for Deed, removed Kumar from the store, and subsequently prevented him from returning to the Glacier Way C-Store after Kumar confronted them. (*Id.* at 6.)

Kumar alleges that he and Toora Brothers were removed and excluded from the Glacier Way C-Store, his business inventory and supplies, and his personal belongings and living quarters. (*Id.*) Plaintiffs assert that they filed a claim with Am Trust, but that Plaintiffs' claim incorrectly characterized the description of loss as "theft" of Toora Brothers' business inventory. (*Id.* at 7.) Am Trust allegedly denied Plaintiffs coverage by verbally contacting a Toora Brothers' employee, who was not authorized to be such a point of contact. (*Id.*) Plaintiffs relatedly claim that Am Trust did not subsequently contact Plaintiffs until they requested a denial of coverage in writing in April 2024. (*Id.* at 8.)

Plaintiffs assert the following claims for relief: (1) breach of insurer's duty of good faith; (2) breach of insurer's duty of good faith in dealing with a third party; (3) violation of the Montana Unfair Trade Practices Act; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) breach of

fiduciary duty; and (7) insurer breach of contract. (*Id.* at 9-22.) Plaintiffs seek general, special, and punitive damages, and costs, interest, and attorney's fees. (*Id.* at 23.)

The relevant insurance policy (Doc. 6-1) provides in pertinent part, "[The insurer] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (*Id.* at 135.) It remains undisputed that the Glacier Way C-Store was the Covered Property for purposes of the Policy.

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

## DISCUSSION

The Court will discuss whether coverage exists under the terms of the relevant insurance policy. The Court will then consider Plaintiffs' claims predicated on the existence of coverage.

## I.    Whether the Policy provides coverage to Plaintiffs based on the theory of "direct physical loss of or damage."

Am Trust contends that Plaintiffs fail to allege any "direct physical loss of or damage" to the Glacier Way C-Store. (Doc. 6 at 7-13.) The Court agrees. The Court's jurisdiction over this action is based on diversity of citizenship. The Court must apply the substantive law of Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

The interpretation of an insurance contract is a question of law in Montana. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (Mont. 2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F. Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008)). The terms and words used in an insurance policy are to be given their usual meaning and construed using common sense. *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 896 (Mont. 2003).

Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009). "An ambiguity exists when the policy, taken as a whole, is reasonably susceptible to two different interpretations." *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007). But a court should not "seize upon certain and definite covenants expressed in plain English with violent hands and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005). Moreover, "a court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a 'good purpose.'" *Heggem*, 154 P.3d at 1193.

5

The Montana Supreme Court has not addressed the term "direct physical loss of or damage" squarely in the context of an insurance policy. The Montana Supreme Court has addressed issues that provide guidance. In *Truck Ins. Exch. v. O'Mailia*, the court noted, in analyzing an insurance policy, that physical injury is defined as "a physical and material alteration resulting in a detriment." 343 P.3d 1183, 1186–87 (Mont. 2015) (quoting *Swank Enters. V. All Purpose Servs., Ltd.*, 154 P.3d 52, 56 (Mont. 2007). In *Graber v. State Farm Fire & Cas. Co.* the court emphasized that there must be a direct physical injury to tangible property for economic loss to be covered by insurance. 797 P.2d 214, 216–17 (Mont. 1990). The Montana Supreme Court reasoning indicates there must be some nexus between the alleged loss and the physical condition of the property. Courts across the country analyzed extensively the scope of "direct physical loss or damage to property" in the wake of the COVID-19 pandemic. Numerous courts agree with the Montana Supreme Court regarding the nexus requirement.

*Billings Clinic v. Am. Guarantee & Liab. Ins. Co.* proves instructive. 2022 WL 773207 (D. Mont. Feb. 22, 2022). *Billings Clinic* involved a dispute between the Billings Clinic, a non-profit health care system in Montana, and the Billings Clinic's insurer, American Guarantee and Liability Insurance Company ("AGLIC"). *Id.* at *1. AGLIC issued an insurance policy of up to $650 million for covered losses. *Id.* The Billings Clinic initiated a claim for losses under the policy after the onset of

the COVID-19 pandemic. *Id.* The Billings Clinic filed suit alleging breach of contract and seeking declaratory judgment after AGLIC withheld coverage. *Id.* The court analyzed whether the insurance policy, which covered losses defined as "[a]ll risks of direct physical loss of damage from any cause unless excluded," covered the Billings Clinic's claim. *Id.* The court determined the policy did not cover the claim. *Id.* at ** 4–5.

The court relied on numerous federal circuit and district court opinions that addressed the same issue in the context of the COVID-19 pandemic. *See id.* at *4. Even more instructive was the court's analysis of Circuit court decisions evaluating the principle underlying the Billings Clinic's arguments — "that 'direct physical loss of' includes the loss of use or access to covered property." *Id.*at *5. Circuit courts have consistently determined that there must be some nexus between the alleged loss and physical damage to the property at issue. *See e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 893 (9th Cir. 2021) (finding the phrase "physical loss of or damage to" requires "an insured to allege physical alteration of its property"); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456–57 (5th Cir. 2022) (finding "'physical loss of property' to require a tangible alteration or deprivation of property"); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) ("[T]here must be some physicality to the loss or damage of property—e.g., a physical alteration, physical contamination, or physical

7

destruction"); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 222–23 (2d Cir. Dec. 27, 2021) (concluding "direct physical loss" does not extend to loss of use but requires physical damage).

The Court recognizes *Billings Clinic* and the cases that court relied on are factually distinct from this case. Those cases involved insurance claims related to loss of use resulting from the COVID-19 pandemic. The reasoning as to why Plaintiffs' claims fail still applies. Plaintiffs do not allege that the property at issue suffered any physical or tangible damage. (*See* Doc. 1.) Plaintiffs allege instead that Kumar was forcibly removed and evicted from the property. (*Id.*, ¶¶ 13–14, 17.) Kumar's removal from the property has no nexus to the property's physical condition.

Plaintiffs' claims fail even under a broad reading of the contract language where "direct physical loss of or damage" includes deprivation of property. Plaintiffs must still demonstrate some nexus between the deprivation and the physical condition of the property. One case proves informative to the Court in applying the broad deprivation standard.

*Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.* involved a dispute over property insurance coverage for the nation's largest military shipbuilding company during the COVID-19 pandemic. 287 A.3d 515, 519–20 (Vt. 2022). The Vermont Supreme Court interpreted the term "direct physical loss or damage to property." *Id.*

at 524–33. The court determined that the term included "two distinct components" that would trigger coverage: (1) direct physical damage; and (2) direct physical loss. *Id.* at 532–33. Direct physical damage requires "distinct, demonstratable, physical change to property." *Id.* at 533. Direct physical loss includes "four central components." *Id.* at 529. Those components are: (1) destruction or deprivation; (2) in whole or in part; (3) with a causal nexus to a physical event or condition; and (4) persistence. *Id.* "Purely economic harm will not meet either of these standards." *Id.* Courts have further noted that "reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure" do not constitute direct physical loss. *Deer Mountain Inn LLC v. Union Ins. Co.*, 541 F. Supp. 3d 235, 246 (N.D.N.Y. 2021), *aff'd,* No. 21-1513, 2022 WL 598976 (2d Cir. Mar. 1, 2022) (quoting *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014)). The causal nexus underpins the four components and is supported by Montana law. *See Graber*, 797 P.2d at 216–17.

Plaintiffs' claims fail because Plaintiffs cannot establish a nexus of the alleged loss due to the physical condition of the property. The first component requires that property be deprived or destroyed. Plaintiffs allege they were forcibly removed from the Glacier Way C-Store and denied access to their business inventory and personal belongings. (Doc. 1, ¶¶ 13–15.) Plaintiffs' allegations do not indicate any physical alteration or destruction of the property itself. Kumar's removal from the premises

9

does not equate to a physical change or destruction of the property. Kumar's removal from the property was "exogenous to the [property]." *Deer Mountain Inn*, 541 F. Supp. 3d at 246.

The second component considers whether the deprivation or destruction is in whole or in part. Plaintiffs claim a complete loss of access to the property and its contents. (Doc. 1, ¶¶ 13–15.) The loss of access does not constitute a physical loss of the property itself. The property remains intact and undamaged, and Plaintiffs' inability to access it is due to actions by the Schildts, not a physical condition affecting the property.

The third component requires a causal nexus between the deprivation and a physical event or condition. The court in *Huntington* emphasized the need for a direct link between the loss and the physical condition of the property. 287 A.3d at 531–32. Plaintiffs alleged loss of access is due to the actions of the Schildts, not any physical event or condition affecting the property itself. (Doc. 1, ¶¶ 13–15.) Plaintiffs have not alleged any physical damage or alteration to the property that would trigger coverage under the policy.

The fourth component considers the persistence of the loss. Plaintiffs allege a persistent deprivation of access to the property. (*Id.*) The persistence of the loss is not due to a physical condition of the property but rather the ongoing actions of the

10

Schildts. The policy requires that the persistence of the loss be related to a physical condition of the property, which is not the case here.

Plaintiffs' alleged loss of access to the property is not due to any physical alteration or destruction of the property, lacks a causal nexus to a physical event or condition, and the persistence of the loss is unrelated to the physical condition of the property. The Court concludes Plaintiffs' claims do not trigger coverage under the policy.

## II.     Whether Plaintiffs may assert their claims predicated on the existence of coverage.

Plaintiffs' assert seven claims against Am Trust. (*See* Doc. 1.) The claims are based upon common law bad faith, the Montana Unfair Trade Practices Act, and other common law claims predicated on the existence of insurance coverage. (*Id.*)

It is well established law in Montana that "where there is no coverage, there is no bad faith." *Streeter v. USAA Gen. Indem. Co.*, 2022 WL 18460746 at *10 (D. Mont. Sept. 27, 2022) (quoting *EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at Lloyd's of London*, 59 F. Supp. 2d 1072, 1076 (D. Mont. 1999). Because the insurance policy unambiguously excludes coverage, the rest of Plaintiffs' claims predicated on the existence of coverage fail. *See e.g.*, *Parker v. Safeco Ins. Co. of Am.*, 376 P.3d 114, 121 (Mont. 2016) (claims under the Unfair Trade Practices Act fail considering a finding of no

coverage); *Redies v. Attys. Liab. Prot. Soc'y*, 150 P.3d 930, 934 (Mont. 2007) (barring an insufficient investigation claim because the insurer had a "reasonable basis in law" for refusing to pay claim).

## CONCLUSION

The Court will grant Defendant's motion to dismiss. Plaintiffs' claims are dismissed due to the lack of coverage under the insurance policy. Plaintiffs cannot assert their claims for breach of contract, breach of the duty of good faith, violation of the Montana Unfair Trade Practices Act, and related common law claims without coverage.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Am Trust's motion to dismiss for failure to state a claim (Doc. 5) is **GRANTED**. This action is dismissed without prejudice. The Clerk of Court will enter Judgment accordingly.

   DATED this 6th day of March, 2025.


   _____
   Brian Morris, Chief District Judge
   United States District Court